IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SKYLER SKY<br>AKA BRADLEY J. CORNILLE,<br><br>        Plaintiff,<br><br>v.<br><br>STEVE A. SCOTT, JASON D. ROBINSON, DANIEL MONTI, SHANE REISTER, MICHELLE DULLE, GARY MCQUARRIE, MARK VINYARD, LOUIS R. ZIPPER, TYRONE HABB, HARLEY M. BRADY, KURT V. HEIDEL, CRAIG J. DORRIES, MELISSA RUCKER, BILLY L. STANHOUSE JR., DOUG STEPHENS, TRUDY HALLINAN, and BARBARA J. WHEELER,<br><br>        Defendants. | Case No. 25-cv-337-RJD |

## MEMORANDUM AND ORDER

**DALY, Magistrate Judge:**

Plaintiff Skyler Sky, aka Bradley J. Cornille, an inmate of the Illinois Department of Corrections who is currently incarcerated at Dixon Correctional Center, brings this action pursuant to 42 U.S.C. § 1983 for deprivations of their constitutional rights while at Centralia Correctional Center. In the Complaint, Sky alleges that Defendants failed to protect them from sexual assault and then retaliated against them for reporting the assault.

1

This case is now before the Court for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A.[1] Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

## The Complaint

Skyler Sky is a transgender female and was incarcerated at Centralia Correctional Center from May 2022 through September 14, 2022 (Doc. 1, pp. 2, 4). While at Centralia, Sky wrote request slips and spoke to several officials about their safety and security concerns in the prison law library (*Id*. at p. 4). Sky communicated in some way with Steve A. Scott, Jason D. Robinson, Daniel Monti, Shane Reister, Michelle Dulle, Gary McQuarrie, Mark Vinyard, Billy Stanhouse Jr., and Craig J. Dorries (*Id*.). Sky expressed concerns being a vulnerable transgender female in the PRISM Program (a safety program for transgender female prisoners) housed in an all-male prison (*Id*.). Sky was also concerned with what they categorize as a "toxic environment" in the law library where inmates engaged in exploitation, trafficking, gambling, and fighting (*Id*.). Specifically, inmate law library workers Louis R. Zipper, Tyrone S. Gabb, and Harley M. Brady

---

[1] The Court has jurisdiction to screen the Complaint in light of Plaintiff's consent to the full jurisdiction of a Magistrate Judge, and the limited consent by the Illinois Department of Corrections and Wexford Health Sources, Inc., to the exercise of Magistrate Judge jurisdiction as set forth in the Memoranda of Understanding between this Court and these two entities.

engaged in these exploits in the library's excess legal box room (*Id*.). Sky alleges that the head of the law library, Steve A. Scott, was willfully ignorant of the events taking place in the excess legal box room and received bribes from the inmates to ignore the issues. He often hid in his office or left the library entirely (*Id*.). He also allowed the inmates to access his computer, internet, and email (*Id*.).

Sky alleges that they and the other transgendered inmates were exploited by the inmate workers (Doc. 1, p. 4). The workers often demanded payment of commissary items in exchange for helping the inmates with legal research, forms, copies, and other items (*Id*.). All of the transgendered inmates reported their concerns to Scott, Robinson, Monti, Reister, Dulle, McQuarrie, Vinyard, Stanhouse, and Dorries either through written requests or verbally for several months (*Id*.). But no steps were taken to remedy the issues with safety in the prison law library (*Id*.).

On September 14, 2022, Sky was sexually assaulted in the excess legal box room (Doc. 1, p. 4). After the assault, they wrote a PREA Notice to Jason D. Robinson (*Id*.). On September 15, 2022, Sky spoke to Robinson on their way to a video court hearing (*Id*. at pp. 4-5). Sky told Robinson that they did not feel safe at the prison and needed to talk to Robinson in private (*Id*.). Robinson said that he would talk to the warden immediately about their concerns and returned a few minutes later indicating that the warden agreed to a transfer if Sky signed a statement (*Id*. at p. 5). Sky inquired about the prison they would be sent to as they wanted to stay in an "open" prison like Centralia (*Id*.). Robinson said he would look into it and speak to Sky later. Sky mentioned that after the assault and retaliation, they wanted to leave Centralia (*Id*.).

3

Sky alleges that after the meeting with Robinson and reporting the assault, they were subsequently retaliated against by Scott, Robinson, Monti, Reister, Dulle, McQuarrie, Vinyard, Kurt V. Heidel, and Dorries (Doc. 1, p. 5). Sky alleges that Scott conspired with the other defendants and issued a false disciplinary report (*Id*.). Sky believes this was an attempt by all defendants to destroy their evidence of the sexual assault as Sky had undergarments with blood and semen in their possession (*Id*.).

Later that same day, Robinson called Sky over to the administration/segregation building (Doc. 1, p. 5). Although Sky believed Robinson intended to interview them about the assault, Robinson instead indicated that Sky was going under investigation for handing out the warden's phone number in the library (*Id*.). Robinson confiscated the folder with Sky's evidence and directed Sky to place their hands behind their back, despite Sky having a waist chain permit (*Id*.). Sky informed Robinson of their waist chain permit and Robinson directed Sky to walk to segregation uncuffed (*Id*.).

In segregation, Robinson shoved Sky to Sergeant Heidel. Sky saw Robinson pull the evidence from Sky's folder and toss it into the trash can (Doc. 1, p. 5). Sky complained that Robinson tossed their evidence but was ignored by the officers. Sergeant Heidel shoved Sky toward the shower, directing Sky to strip in the shower (*Id*. at p. 6). Sky refused, noting that they were transgender and could not strip in front of a male guard. They also indicated that their evidence needed to be retrieved from the trash. Heidel then sexually assaulted Sky by grabbing their left breast and then shoved Sky into the shower so hard that they hit the rear wall and collapsed (*Id*.). In response, Sky demanded a crisis team.

Lieutenant Dorries arrived and escorted Sky to the healthcare unit (Doc. 1, p. 6). Sky tried to explain about the discarded evidence and the sexual assault (*Id.*). Dorries accused Sky of planning the event. Sky felt that they could not tell mental health about the sexual assault because of the presence of Dorries and a fear that Dorries would attack Sky if they divulged the assault (*Id.*). Sky informed nurses Trudy Hallinan and Barbara Wheeler of the assault, but they took no action (*Id.*). Sky remained in crisis watch on a hunger strike from September 15 until September 19 (*Id.*). While on watch, Sky alleges that Hallinan and Wheeler denied them medical care (*Id.*). Sky had high levels of Ketones in their urine, but Hallinan and Wheeler ignored their condition (*Id.*).

On September 18, 2022 McQuarrie approached Sky's crisis watch cell and tried to convince Sky to come off of watch (Doc. 1, p. 6). He promised to prohibit any retaliation against Sky if they agreed to come off of watch (*Id.*). Sky asked to be moved back to their housing unit, return to their porter job, and prohibit any retaliation against them (*Id.*). McQuarrie agreed and Sky accepted a meal tray and came off watch the following day (*Id.*).

Immediately after coming off watch, Sky alleges that they experienced retaliatory actions (Doc. 1, p. 6). At 10:00 a.m., the morning of September 19, 2022, Defendant Dorries moved Sky to the segregation unit. Dorries informed Sky that they were being transferred on the orders of Warden Daniel Monti (*Id.* at p. 7). Sky was searched and their property was destroyed (*Id.*). PREA Retaliation Monitor Melissa Rucker, McQuarrie, and transfer coordinator Doug Stephens directed the transport of Sky (*Id.*). The officers told Sky that they were being transferred to Pinckneyville Correctional Center. Sky alleges that this

transfer was retaliatory because Pinckneyville is a high-medium disciplinary prison that is on lockdown 21-hours a day (*Id*.). Centralia does not have any lockdowns except for 9 hours during the night (*Id*.). Sky alleges that they failed to receive any due process prior to the transfer. Further, as a PREA monitor, Sky alleges Rucker had a duty to prevent the retaliation but failed to intervene (*Id*.).

Once at Pinckneyville, Sky received two final summary reports on September 27, 2022, documenting the disciplinary reports from Centralia (Doc. 1, p. 7). But the reports did not order a disciplinary transfer and Sky never received due process (*Id*.). On October 26, 2022, Billy Stanhouse Jr., an IDOC internal security investigator, conducted an interview with Sky about the assault and retaliation (Doc. 1, p. 7). Sky provided Stanhouse with a list of witnesses, but Stanhouse failed to interview these witnesses (*Id*.). Sky believes Stanhouse sought to cover-up the actions of the officials at Centralia.

## Preliminary Dismissals

Although Sky attempts to sue the inmates who engaged in unsafe activities in the law library, Sky cannot maintain a claim against inmates under Section 1983. "[U]nder [Section] 1983, a plaintiff can sue only 'state actors,' which is another way of saying that the people a plaintiff sues must have legal authority over the plaintiff under state law." *Fleischman v. Matz*, Case No. 17-CV-1607-DEJ-PP, 2018 WL 3637541, at *3 (E.D. Wis. July 31, 2018) (citing *West v. Atkins*, 487 U.S. 42, 49 (1988)). The inmates are not state actors who can be sued pursuant to Section 1983. Thus, any potential claims for constitutional violations by Louis R. Zipper, Tyrone Gabb, and Harley M. Brady are **DISMISSED without prejudice**.

6

Sky also alleges that their due process rights were violated during the issuance of two disciplinary tickets. Due process safeguards that are associated with prison disciplinary hearings include: (1) advance written notice of the charges; (2) the opportunity to appear before an impartial hearing body to contest the charges; (3) the opportunity to call witnesses and present documentary evidence as a defense (if prison safety allows and subject to the discretion of correctional officers); and (4) a written statement summarizing the reasons for the discipline imposed. *See Wolff v. McDonnell*, 418 U.S. 539, 563-69 (1974). In addition, the decision of the adjustment committee must be supported by "some evidence." *Scruggs v. Jordan,* 485 F.3d 934, 941 (7th Cir. 2007). Sky fails to allege how their due process rights were violated other than to allege they were transferred without a transfer order.

But an inmate's liberty interests are protected by the Due Process Clause only insofar as a deprivation of the interest at issue would impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Sky points only to their transfer to Pinckneyville as a punishment, but a prison transfer does not invoke due process protections. *Hoskins v. Lenear*, 395 F.3d 372, 375 (7th Cir. 2005) (demotion in status and transfer fail to raise due process concerns). Sky's attached disciplinary reports indicate that the report for dangerous communications was expunged due to improper service procedures (Doc. 1, p. 21). Sky received only 7 days in segregation on the second attached disciplinary report. But such a short stay in segregation, by itself, does not typically amount to an atypical and significant hardship. *Sandin*, 515 U.S. at 484; *Thomas v. Ramos*, 130 F.3d 754, 761-62

7

(7th Cir. 1997) (two months not enough on its own); *Williams v. Brown*, 849 F. App'x 154, 157 (7th Cir. 2021) (noting that 30 days is not enough). Thus, Sky fails to state a due process claim in regards to their transfer.

Sky also fails to state a claim under the Fourteenth Amendment for violation of their equal protection rights. Sky merely states in conclusory fashion that their equal protection rights were violated. Without more, their mere conclusory statements do not state a claim. Any potential claims for violations of Sky's equal protection rights are **DISMISSED without prejudice**.

Finally, Sky seeks to allege a claim for intentional infliction of emotional distress under Illinois state law (Doc. 1, p. 3). In order to state such a claim, a plaintiff must show that the officials acted in an extreme and outrageous way, intended to inflict severe emotional distress or knew of the high probability that it would occur, and caused the plaintiff to suffer from severe emotional distress. *See Doe v. Calumet City*, 161 Ill.2d 374, 392 (Ill. 1994) (citing Restatement (Second) of Torts § 46, comment d (1965)). But Sky only alleges in conclusory fashion that all of the defendants "engaged in extreme, outrageous, willful, malicious, and wanton conduct." (Doc. 1, pp. 7-8). They fail to indicate what conduct was extreme and outrageous, nor have they alleged how the officials' actions caused them emotional distress. Without more, Sky fails to state a claim for intentional infliction of emotional distress.

## Discussion

Based on the allegations in the Complaint, the Court designates the following counts:

> **Count 1:** Eighth Amendment failure to protect claim against Steve Scott, Jason Robinson, Daniel Monti, Shane Reister, Michelle Dulle, Gary McQuarrie, Mark Vinyard, Billy Stanhouse Jr., and Craig J. Dorries for failing to protect Sky from a sexual assault on September 14, 2022.
>
> **Count 2:** First Amendment retaliation claim against Steve A. Scott, Jason D. Robinson, Daniel Monti, Shane Reister, Michelle Dulle, Gary McQuarrie, Mark Vinyard, Kurt V. Heidel, and Craig Dorries for issuing a disciplinary ticket, destroying evidence, and transferring Sky in retaliation for reporting the sexual assault.
>
> **Count 3:** Eighth Amendment excessive force claim against Kurt V. Heidel for his use of force against Sky on September 15, 2022.
>
> **Count 4:** Eighth Amendment deliberate indifference to medical needs claim against Trudy Hallinan and Barbara J. Wheeler for failing to treat Sky's injuries from the assault and excessive force.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[2]

**Count 1**

Sky fails to allege a viable failure to protect claim. In order to state a claim, a plaintiff must show that prison officials were aware of a specific, impending, and

---

[2] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

substantial threat to their safety, often by showing "that [they] complained to prison officials about a specific threat to [their] safety." *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996). But Sky only alleges in conclusory fashion that they and other transgender inmates complained about the "safety/security concerns" in the law library. There is no indication when Sky talked to or submitted requests to each individual defendant and the nature of those complaints. And Sky only alleges they talked to Stanhouse after the attack. Sky alleges that the inmates in the law library were engaged in illegal activities including exploitation, trafficking, gambling, and fighting, and that the inmates demanded payments from transgender inmates for library services (Doc. 1, p. 4). But there is no indication that any of the defendants were aware of a specific threat to Sky's safety before the attack or that Sky was at risk of sexual assault from any of the inmate workers. Sky fails to make clear if they were even assaulted by one of the inmate workers, only noting that the failure to act on complaints led to Sky being sexually assaulted in the law library (*Id.* at p. 4). Sky's vague allegations fail to allege that any defendant was aware of a specific threat to Sky's safety. Thus, Count 1 against Steve Scott, Jason Robinson, Daniel Monti, Shane Reister, Michelle Dulle, Gary McQuarrie, Mark Vinyard, Billy Stanhouse Jr., and Craig J. Dorries is **DISMISSED without prejudice**.

**Count 2**

Sky does, however, state a retaliation claim against Steve Scott, Jason Robinson, Daniel Monti, Gary McQuarrie, Kurt V. Heidel, Melissa Rucker, and Doug Stephens. To state a First Amendment retaliation claim, a plaintiff must allege that they engaged in protected activity, "suffered a deprivation likely to deter such activity," and the "First

10

Amendment activity was at least a motivating factor in the decision to impose the deprivation." *Hawkins v. Mitchell,* 756 F.3d 983, 996 (7th Cir. 2014) (citations omitted). *See also Douglas v. Reeves*, 964 F.3d 643, 646 (7th Cir. 2020) (citing *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009)).

Sky adequately alleges that Steve Scott retaliated against Sky for reporting the sexual assault by writing a disciplinary report against Sky (Doc. 1, p. 5). Robinson also allegedly retaliated against Sky by destroying evidence of the assault and placing Sky in segregation. Sky alleges that Heidel and Dorries participated in the destruction of evidence when they informed the officers of Robinson's actions, and the officers made no efforts to retrieve the lost evidence. Robinson handed Sky off to Heidel who allegedly sexually and physically assaulted Sky (*Id*. at pp. 5-6). Further, Dorries, Rucker, Monti, McQuarrie, and Stephens participated in the retaliatory transfer of Sky to a higher disciplinary prison with less privileges (*Id*. at p. 7).

Sky fails, however, to state a retaliation claim against Shane Reister, Michelle Dulle, and Mark Vinyard. Sky states only in conclusory fashion that Reister, Dulle, and Vinyard participated in the retaliatory actions and helped obtain, tamper, and destroy evidence of Sky's assault. But Sky fails to provide any factual allegations indicating their personal involvement in the retaliatory efforts of the other defendants. Thus, Sky fails to state a claim against Shane Reister, Michelle Dulle, and Mark Vinyard. Any claim against these defendants is **DISMISSED without prejudice**.

**Count 3**

Sky also states a claim against Kurt V. Heidel for his use of force against Sky. Sky alleges that Heidel improperly groped their breast and shoved them into the shower wall. Thus, Count 3 shall proceed against Heidel.

**Count 4**

Finally, Sky states a viable deliberate indifference claim against Trudy Hallinan and Barbara J. Wheeler. Sky alleges that they informed Hallinan and Wheeler about the assaults, but they took no action. They also failed to provide care when Sky developed high Ketone levels. Thus, Count 4 shall proceed against Hallinan and Wheeler. *Giles v Godinez*, 914 F.3d 1040, 1049 (7th Cir. 2019) (To state a deliberate indifference claim, "[t]he plaintiff must prove that [they] suffered from (1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent.") (quotations omitted).

## Disposition

For the reasons stated above, Count 1 is **DISMISSED without prejudice**. Count 2 shall proceed against Steve Scott, Jason Robinson, Daniel Monti, Gary McQuarrie, Kurt V. Heidel, Melissa Rucker, and Doug Stephens but is **DISMISSED without prejudice** as to Shane Reister, Michelle Dulle, and Mark Vinyard. Count 3 shall proceed against Kurt V. Heidel. Count 4 shall proceed against Trudy Hallinan and Barbara J. Wheeler. All other claims and defendants, including any claim against Louis R. Zipper, Tyrone Gabb, and Harley M. Brady are **DISMISSED without prejudice**.

The Clerk of Court shall prepare for Steve Scott, Jason Robinson, Daniel Monti, Gary McQuarrie, Kurt V. Heidel, Melissa Rucker, Doug Stephens, Trudy Hallinan and Barbara Wheeler: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons) and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each defendant's place of employment as identified by Sky. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Sky, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. Section 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order**.

**Because Sky's claims also involve their medical care, the Clerk of Court is DIRECTED to enter the Court's standard HIPAA Qualified Protective Order.**

If judgment is rendered against Sky, and the judgment includes the payment of costs under Section 1915, they will be required to pay the full amount of the costs, regardless of whether their application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Sky is **ADVISED** that they are under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in their address; the Court will not independently investigate their whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: May 16, 2025.**

*/s/ Reona J. Daly*
**REONA J. DALY**
**U.S. Magistrate Judge**

### Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**